THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ALVIN S. SPENCER, Defendant-Appellant.

Second District   No. 2—90—0825

Opinion filed June 12, 1992.

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel A. Fish, State's Attorney, of Dixon (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

The defendant, Alvin S. Spencer, was convicted following a bench trial of the offenses of criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(1)) and theft of property under $300 (Ill. Rev. Stat. 1989, ch. 38, pars. 16—1(a)(1), (b)(1)). The defendant was sentenced to 12 years' imprisonment for the criminal sexual assault conviction and to a concurrent term of 364 days in the Lee County jail for the theft conviction. The sole issue raised by the defendant on appeal is whether the 12-year sentence imposed is excessive.

At trial, V.D. testified that, on March 16, 1990, she moved to an apartment in Dixon, Illinois, which was part of a public housing project. The defendant, the defendant's twin brother Calvin, and Walter Addison visited her apartment on March 23, 1990, in order to welcome her to the neighborhood. V.D. testified that, on March 25, 1990, she returned home at about 1 a.m. after riding around with a girlfriend. Shortly thereafter, the defendant knocked on her door. He asked to come in for a few minutes, and V.D. let him in because she "justified him as being a friend."

V.D. and the defendant listened to tapes and talked for a while, and the defendant drank some vodka he brought with him. The

defendant then took $46 that V.D. had placed in a chair pocket. The defendant told her that he would not return the money unless she had sex with him. He also offered to buy her a television set and pay her telephone bill if she had sex with him. V.D. refused and asked the defendant to leave. The defendant then threw her on the floor, held her arms and engaged in sexual intercourse with her. The intercourse occurred on a sleeping bag which was on the living room floor.

V.D. did not call the police. She did tell her boyfriend what had happened and asked him to move back in with her because she was scared. V.D. testified that the defendant came back to the apartment several times after the incident and called her "dirty names." On March 28, 1990, the defendant knocked on the door. V.D.'s boyfriend was there, and V.D. asked the defendant to leave. V.D.'s boyfriend and the defendant got into a fight, and the police were called. V.D. told a responding police officer what had happened on March 25, and the defendant was arrested.

V.D.'s boyfriend also testified regarding the defendant's visits to the apartment after March 25, and Debra McGlown, V.D.'s neighbor, testified that the defendant told her that he had some of V.D.'s money and that he "got that sweet, pretty thing." A forensic scientist testified that a hair found on the sleeping bag in V.D.'s apartment was consistent with the defendant's head hair standard.

The defendant presented an alibi defense through his own testimony and the testimony of his girlfriend. This testimony was contradicted by three witnesses called by the State in rebuttal.

The trial court found the defendant guilty of criminal sexual assault and theft of property under $300. A presentence investigation report was prepared. The report stated that the defendant was 26 years old. The defendant had previous convictions of disorderly conduct, no valid driver's license, resisting arrest, misdemeanor unlawful use of a weapon, and the failure to have a firearm owner's identification card. The report also stated that the defendant had earned his GED. He had lived in Dixon for almost one year and was not employed but supported himself "by gambling at Wilson's Tavern where he plays dice and shoots pool."

A sentencing hearing was held on July 2, 1990. V.D. testified that she no longer had a job and was "afraid to go anywhere." The State argued that it was a very serious offense and that the maximum sentence should be imposed. Defense counsel argued that the minimum term of imprisonment would be appropriate because the defendant had no prior felony convictions. The trial judge stated that he considered the presentence investigation report and the evidence presented.

He then thoroughly discussed the relevant mitigating and aggravating factors. He specifically noted that the defendant's "record is minimum [*sic*] and that definitely is a mitigating factor." He also noted, however, that the defendant overpowered the victim when she told him "no" and further stated:

> "[One] of the most troubling facts to me was that after the offense occurred it wasn't sufficient for him to let it alone. He came back every night thereafter. He called her dirty names. He knocked on her door. He wanted to fight. He called her names. He was asked to leave. So he continued to intimidate her and harass her all in a public—in a public facility which is designed to help people who need help and are looking for a place to live where they are in circumstances which are unfortunate for them and where they're not able to find other housing."

The court then sentenced the defendant to a term of 12 years in the Department of Corrections. The defendant's motion for a new trial was subsequently denied, and this timely appeal followed.

On appeal, the defendant argues that the trial court abused its discretion by sentencing him to 12 years' imprisonment, a sentence just three years short of the maximum penalty. He asserts that the sentence imposed is excessive because he had no prior felony convictions, had only a minimal record of misdemeanor convictions, and had no record of juvenile adjudications. He also contends that the sentence is excessive because the "complaining witness suffered no physical harm as a result of the criminal sexual assault." He further argues that, based upon his prior record, the instant offense was "an aberration in an otherwise relatively law-abiding lifestyle."

■ We initially note that the defendant did not raise an excessive sentence issue in his post-trial motion and did not challenge the basis of his sentence in a motion to reconsider or reduce his sentence. Although this issue may therefore be deemed waived (*People v. Macke* (1992), 224 Ill. App. 3d 815, 816; *People v. Bolden* (1991), 210 Ill. App. 3d 940, 947), we will consider the issue raised by the defendant.

The defendant was convicted of a Class 1 felony (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(b)), and a sentence of imprisonment was required because of the nature of the offense. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(c)(2)(H).) The permissible sentencing range for a Class 1 felony is a term of imprisonment of 4 to 15 years. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(4).) The defendant's sentence of 12 years' imprisonment was therefore within the permissible range.

A trial court's sentencing decisions are entitled to great deference and weight, and the standard of review is whether the trial court abused its discretion in imposing the sentence. (*People v. Streit* (1991), 142 Ill. 2d 13, 18-19; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) A trial court has wide latitude in sentencing a defendant to a term within the statutory range prescribed for the offense so long as it "does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors." *People v. Hernandez* (1990), 204 Ill. App. 3d 732, 740.

Further, a trial court is not required to give a defendant's rehabilitative potential more weight in its sentencing decision than it gives the seriousness of the offense. (*People v. Smith* (1991), 214 Ill. App. 3d 327, 341.) In fact, the seriousness of the offense has been called the most important factor to consider in imposing sentence. *Hernandez*, 204 Ill. App. 3d at 740.

In this cause, the trial court specifically stated that the defendant did not have a significant record of prior criminal offenses and that it considered this a mitigating factor. The court also, however, gave consideration to the seriousness of the offense, including the fact that the defendant continued to harass the victim following the offense. It then imposed a sentence three years below the maximum possible sentence. We conclude that there was no abuse of discretion under these circumstances.

We further note that we agree with the State that defendant's past record is hardly impressive. While all of the defendant's prior convictions were of misdemeanor offenses, the defendant's previous experiences with the judicial system could be considered to indicate a lack of rehabilitative potential. See *People v. Kendall* (1991), 213 Ill. App. 3d 782, 788.

In addition, we note that we strongly disagree with the defendant's argument that his sentence was excessive because the victim "suffered no physical harm." A criminal sexual assault is harmful to a victim, even if no bodily harm is caused, and has been classified as a serious offense, a Class I felony, by the legislature for that reason. Ill. Rev. Stat. 1989, ch. 38, par. 12—13(b); *cf.* Ill. Rev. Stat. 1989, ch. 38, pars. 12—14(a)(2), (d) (a criminal sexual assault where "the accused caused bodily harm to the victim" is aggravated criminal sexual assault, a Class X felony).

The cases relied on by defendant to support his contention that the sentence imposed was excessive are inapposite and do not persuade us to change our conclusion. (See *People v. Harris* (1989), 187 Ill. App. 3d 832, 844-47 (25-year sentence for aggravated criminal sex-

ual assault excessive where the defendant was an alcoholic who was usually intoxicated during the criminal sexual acts with the victim and was being treated for his illness, had a good work record and provided financial support for his dependents, and had only two prior convictions of misdemeanor offenses); *People v. Anderson* (1985), 142 Ill. App. 3d 240, 243 (17-year sentence for residential burglary excessive where the defendants were 17 years old and lacked any significant or extensive prior criminal history); *People v. Treadway* (1985), 138 Ill. App. 3d 899, 904-05 (60-year sentence for attempted murder and armed violence excessive where the 24-year-old defendant had only a minor criminal history, had been physically abused as a child and had suffered from a drug and alcohol problem since the age of 14, and had perpetrated the offense in a fleeting moment of intoxicated rage).) Here, there was no evidence presented that the defendant had a problem with alcohol, and, as noted, the defendant had five prior convictions of misdemeanor offenses.

For the foregoing reasons, the judgment of the circuit court of Lee County is affirmed.

Affirmed.

NICKELS and WOODWARD, JJ., concur.